UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

IN THE MATTER OF ADRIATIC
MARINE, LLC, AS THE OWNER
OF THE M/V CARIBOU,
PETITIONING FOR
EXONERATION FROM AND/OR
LIMITATION OF LIABILITY

CIVIL ACTION

NO: 20-1488

SECTION: J(4)

## ORDER & REASONS

Before the Court is a *Motion for Partial Summary Judgment* **(Rec. Doc. 86)**

filed by Adriatic Marine, LLC ("Adriatic Marine"); an opposition (Rec. Doc. 102) filed

by Third-Party Plaintiff, Dontrelle Davis; a reply (Rec. Doc. 107) filed by Adriatic

Marine; a sur-reply (Rec. Doc. 121) filed by Davis; and a sur-reply (Rec. Doc. 124) filed

by Adriatic Marine. Having considered the motion and legal memoranda, the record,

and the applicable law, the Court finds that the motion should be granted.

## FACTS AND PROCEDURAL BACKGROUND

This case arises out of an incident that took place on or about November 24,

2019 aboard the M/V CARIBOU, which is owned by Adriatic Marine. While unloading

cargo to the Horn Mountain SPAR in the Gulf of Mexico, Davis, a deckhand employed

by Adriatic Marine at the time, allegedly suffered injuries to his left knee, left

shoulder, cervical spine, and lumbar spine. Adriatic Marine received a letter from

Davis' counsel on or about December 9, 2019, notifying them of Davis's potential

claim. In May of 2020, Adriatic Marine filed a *Complaint of Limitation* seeking to

exonerate itself from, or limit, liability for Davis' injuries. (Rec. Doc. 1). Davis filed an

answer and claim to complaint in response to the Limitation, (Rec. Doc. 10), and in October of 2020, Davis filed a Third-Party Complaint alleging Jones Act claims against Adriatic Marine; M/V CARIBOU; Blake International Rigs, LLC; Pioneer Production Services, Inc.; and Oxy, Inc, (Rec. Doc. 29). The instant motion for summary judgment is related to Davis' claim for maintenance and cure against his employer, Adriatic Marine. The motion was initially set for submission on March 23, 2022. Davis filed a motion to continue the submission date in order to depose Adriatic Marine's Vice President of QHSE/ HR, Barret Grabert, and the physician(s) at Adriatic Marine's clinic. (Rec. Doc. 100). Adriatic Marine opposed this motion (Rec. Doc. 105). The Court subsequently granted the motion, and the new submission date was set for July 13, 2022. (Rec. Doc. 112). The motion is now ripe for review.

## LEGAL STANDARD

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing FED. R. CIV. P. 56); *see Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). When assessing whether a dispute as to any material fact exists, a court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence." *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398 (5th Cir. 2008). All reasonable inferences are drawn in favor of the nonmoving party, but a party cannot defeat summary judgment with conclusory allegations or

unsubstantiated assertions. *Little*, 37 F.3d at 1075. A court ultimately must be satisfied that "a reasonable jury could not return a verdict for the nonmoving party." *Delta*, 530 F.3d at 399.

If the dispositive issue is one on which the moving party will bear the burden of proof at trial, the moving party "must come forward with evidence which would 'entitle it to a directed verdict if the evidence went uncontroverted at trial.'" *Int'l Shortstop, Inc. v. Rally's, Inc.,* 939 F.2d 1257, 1264-65 (5th Cir. 1991). The nonmoving party can then defeat the motion by either countering with sufficient evidence of its own, or "showing that the moving party's evidence is so sheer that it may not persuade the reasonable fact-finder to return a verdict in favor of the moving party." *Id.* at 1265.

## DISCUSSION

As an initial note, it is undisputed that Davis suffered multiple injuries prior to beginning his employment with Adriatic Marine.   In March 2005, Davis was involved in a motor vehicle accident, and he was diagnosed with a sprain of his cervical spine. (Rec. Doc. 86-1, at 5). In December 2010, Davis was involved in another motor vehicle accident. (*Id.*). After the 2010 accident, Davis was diagnosed with patella tendonitis, low back pain, and a shoulder injury. (*Id.* at 6). Additionally, after x-rays were taken of his left shoulder, left knee, and back, the doctor observed slight degenerative disc disease at L5-S1. (*Id.*). Subsequently, Davis underwent an MRI of his left shoulder, his left knee, and his lumbar spine. (*Id.*). From these MRI's Davis was diagnosed with an injury to the AC joint of his left shoulder, which was later

described as a labral tear; with a medial collateral ligament tear of his left knee; and an L5-S1 protrusion of about 2-3 millimeters of his lumbar spine. (*Id.* at 6–7). In June 2017, Davis sustained injuries while playing tackle football, and he presented to the hospital complaining of back pain stemming from the tackle football injury as well as intermittent back pain since the 2010 accident. (*Id.* at 7–8). In December 2017, Davis presented to the hospital for treatment of an anxiety attack, and, while there, he told the medical providers that the anxiety stemmed from telling his supervisor that he was experiencing back pain. (*Id.* at 7). Additionally, Davis reported that he had a history of three bulging discs. (*Id.*). The medical providers restricted Davis from heavy lifting greater than fifteen pounds. (*Id.*). In June 2018, Davis presented to the hospital with chest pain after taking ecstasy. (*Id.*). The "past medical history" section of the note prepared in connection with this treatment revealed that Davis reported that he had three bulging discs. (*Id.*). Based upon Davis's medical history, Adriatic Marine argues that Davis had preexisting medical conditions to his left knee, left shoulder, cervical spine, and lumbar spine. (*Id.* at 8). Because Davis failed to report any of these conditions on his pre-employment physical, Adriatic Marine contends that it is entitled to summary judgment on Davis' maintenance and cure claims pursuant to the *McCorpen* Defense. (*Id.*).

Generally, a Jones Act employer/vessel owner has an obligation to provide maintenance and cure for any seaman employee if they suffer injuries or become ill while in the service of a vessel. *The Osceola*, 189 U.S. 158, 175 (1903). The Fifth Circuit has explained that, "[t]he vessel owner's obligation to provide this

compensation does not depend on any determination of fault, but rather is treated as an implied term of any contract for maritime employment." *Jauch v. Nautical Servs.*, 470 F.3d 207, 212 (5th Cir. 2006). Nonetheless, maintenance and cure will not be owed if it is determined that the seaman "knowingly or fraudulently concealed his condition from the vessel owner at the time he was employed." *Id.* (citing *McCorpen v. Cent. Gulf S.S. Corp.*, 396 F.2d 547, 548 (5th Cir. 1968)).

It is well-settled that, "where the shipowner requires the seaman to submit to a pre-hiring medical examination or interview and the seaman intentionally misrepresents or conceals material medical facts, disclosure of which is plainly desired, then he is not entitled to an award of maintenance and cure." *McCorpen*, 396 F.2d at 549. In order to succeed on a *McCorpen* defense, a Jones Act employer/vessel owner must show that: "(1) the claimant intentionally misrepresented or concealed medical facts; (2) the non-disclosed facts were material to the employer's decision to hire the claimant; and (3) a connection exists between the withheld information and the injury complained of in the lawsuit." *Brown v. Parker Drilling Offshore Corp.*, 410 F.3d 166, 171 (5th Cir. 2005) (citing *McCorpen*, 396 F.2d at 548–49). Here, Plaintiff focuses his argument solely on his contention that the allegedly concealed medical facts were not material to Adriatic Marine's decision to hire him. Thus, the Court will not address the first and third prongs, and it will deem them waived.

Under the second prong of *McCorpen*, "[t]he fact that an employer asks a specific medical question on an application, and that the inquiry is rationally related to the applicant's physical ability to perform his job duties, renders the information

material for the purpose of this analysis." *Brown*, 410 F.3d at 175. A seaman's "history of back injuries is the exact type of information sought by employers." *Id.* Moreover, courts have granted summary judgment on the materiality prong "when the evidence establishes that full disclosure of the plaintiff's medical condition would have prompted his employer to conduct further medical evaluation prior to making a hiring decision." *White v. Sea Horse Marine, Inc.*, No. 17-9774, 2018 WL 3756475, at *3 (E.D. La. Aug. 8, 2018). "However, if an employee can show that, even if undisclosed facts were material, he or she would have been hired regardless, the employer is not entitled to the *McCorpen* defense to evade its maintenance and cure obligation." *Hare v. Graham Gulf, Inc.*, 22 F. Supp. 3d 648, 654 (E.D. La. 2014) (citing *McCorpen*, 396 F.2d at 551–52). A triable issue of fact remains when it is unclear whether an employer's hiring decision would be affected by knowledge of a potential employee's previous injuries. *Id.* (citing *Jauch*, 470 F.3d at 212). The principal inquiry becomes whether disclosure of the allegedly concealed medical information would have prevented the employee from being onboard the vessel at the time of the accident, and thus avoiding the accident and complained of injuries. *Jauch*, 470 F.3d at 212–13.

Here, it is undisputed that Adriatic Marine asked certain questions of Davis about his prior medical conditions in the employment application, and Davis does not appear to dispute that these questions were reasonably related to his ability to do the job for which he applied. The fact that these questions were asked makes the answers material for *McCorpen* purposes. The issue arises as to whether Adriatic Marine still

would have hired Davis regardless of any previous injuries or medical conditions and whether Davis' disclosure would have prevented him from being present on the M/V CARIBOU at the time of the incident at issue.

Here, Davis underwent a physical examination, Adriatic Marine contends, specifically to elicit any information as to Davis's preexisting conditions to determine and confirm his physical capability to perform the work for which he was being hired. (Rec. Doc. 86-1, at 18–19). Adriatic Marine cites to the declaration of its Vice President of Quality, Health, Safety, and Environment/ HR, Barrett Grabert, who states that

> [i]f a prospective employee reports and/or notes any preexisting conditions in the course of completing paperwork related to the pre-employment physical, Adriatic Marine . . . will seek further consultation and information, including but not limited to inquiring regarding prior incidents, injuries and treatment, requesting documentation related to prior incidents, injuries and treatment, additional testing or evaluation in order to determine whether, despite these preexisting conditions, the employee can safely perform the work for which he or she is hired and that the employee does not pose a danger to himself, herself, or other crewmembers.

(Rec. Doc. 86-11, at 3). Because Davis was hired as a deckhand, which is considered a heavy manual labor position that requires certain physical capabilities, including lifting requirements, Adriatic Marine asserts that it materially relied upon Davis' representations that he had not suffered prior injuries in making its decision to hire him as a deckhand. (*Id.* at 4–5). Adriatic Marine avers that questions related to an applicant's history of back injuries and treatment are directly related to the heavy manual labor position for which Davis was hired. (Rec. Doc. 86-1, at 19). Therefore,

Adriatic Marine argues that Davis's non-disclosure of his prior injuries was material to its decision to hire Davis. (*Id.* at 18).

In opposition, Davis contends that even if his alleged undisclosed prior medical conditions were material to Adriatic Marine's hiring of him, he would have been hired regardless. (Rec. Doc. 102, at 10).  As part of his employment application with Adriatic Marine, Davis asserts that he indicated that he would be willing to, and in fact did, submit to a pre-employment physical examination. (Rec. Doc. 102, at 3). On June 21, 2018, Adriatic Marine sent Davis out for a physical examination, the U.S. Coast Guard physical and agility test, at their clinic to determine his fitness for work. (*Id.*). The physician who examined him found that he was able to complete all requirements tested for the position as a deckhand, and that he was able to safely perform the critical tasks tested. (*Id.*). After this examination, Davis argues, he was cleared for duty and found that he could meet heavy duty demands. (*Id.*).

Adriatic Marine argues that if it had known of Davis's preexisting medical conditions, there would have been an additional evaluation in order to determine whether he could safely perform the essential functions of his job. (Rec. Doc. 86-1, at 19). However, Davis asserts that he did undergo such an examination and evaluation of whether he could safely perform his work on June 20, 2018, and Adriatic Marine's clinic found that he could safely perform. (Rec. Doc. 102, at 4). Adriatic Marine, Davis contends, already had the very information they claim they would have sought. (*Id.*). Thus, Davis avers that his alleged concealment was not material to Adriatic Marine's hiring decision. (*Id.*). Moreover, about two months after Davis' employment began, he

suffered a lumbar strain during work. (*Id.* at 5). Adriatic Marine sent him again to its clinic for examination and evaluation. (*Id.*). Davis asserts that the clinic tested and evaluated him, and he was subsequently released to full duty with no limitation. (*Id.*). Despite Adriatic Marine knowing about this prior lumbar strain, he was released to work onboard the M/V CARIBOU. (*Id.*). Therefore, Davis argues that at the time of the subject incident, Adriatic Marine had knowledge that he had at least some prior issue with his lumbar spine, and Adriatic Marine continued to employ him and assigned him to the M/V CARIBOU. (*Id.*).

Moreover, Davis argues that the Fifth Circuit cases of *Jauch v. Nautical Services, Inc.* and *Ramirez v. American Pollution Control Corp.* that Adriatic Marine relies upon are significantly distinguishable for one main reason: timing. (Rec. Doc. 102, at 12). In *Jauch*, the employee was required to undergo a pre-employment physical examination and a complete medical history questionnaire. 470 F.3d at 210. On that questionnaire, the employee indicated that he had never had back, neck, or spine trouble when, in fact, he had injured his back several times *Id.* The employer testified it typically investigates further before hiring an applicant with a history of medical problems. *Id.* at 211. Because the employee did not disclose his prior medical conditions, no further investigation occurred, and the employee was cleared to join the crew of a vessel. *Id.* Just one week later, the employee was injured aboard said vessel. *Id.* The court found that the employer met the *McCorpen* defense, in part, because the disclosure of the employee's concealed medical conditions "would have

either prevented his employment, or at least delayed it, preventing his having being present on the [vessel] at the time of the accident." *Id.* at 212–13.

In *Ramirez*, the court held that there was no genuine issue of material fact regarding whether the employer would have hired the employee even if he had disclosed his preexisting medical conditions. 418 F. App'x 287, 290 (5th Cir. 2011). The employee pointed to testimony in which the person in charge of hiring and firing deckhands stated that it the captain of the vessel had wanted to hire the employee, the employer would have conducted further medical evaluations. *Id.* The Fifth Circuit reasoned that this testimony did not create a genuine issue of material fact regarding materiality because the person in charge of hiring did not state that the employer would have hired the employee, but rather that the employee could have been subject to further medical examination. *Id.* Therefore, the Fifth Circuit found no genuine dispute over materiality where the employee's preexisting medical conditions would have led to further medical examinations before the employer made an employment decision. *Id.* at 290–91.

In contrast, another section of this court found that there was a genuine issue of material fact regarding whether the employer would have hired the employee when the person in charge of hiring stated that the employee *may* have been referred for further medical review. *Savoie v. Inland Dredging Co. LLC*, No. 20-2294, 2022 WL 1540585, at *3 (E.D. La. May 16, 2022); *see also Cal Dive Int'l, Inc. v. Grant*, No. 11-1657, 2013 WL 1099157, at *5 (E.D. La. Mar. 15, 2013) (finding a genuine issue of material fact when the employer stated that it may have hired the employee even if

she did disclose her back injuries). Moreover, while employed by the employer, the employee underwent an MRI that revelated relatively benign injuries, and the employee continued to work for the employer four years after the MRI. *Id.* Therefore, the court found material issues of fact as to the materiality element of *McCorpen. Id.*

Here, Davis argues that because of the immediacy of the injuries in *Jauch* and *Ramirez*, had the respective employer companies subjected each employee to additional testing, they would not have been aboard their respective vessels at the time of the injury. (Rec. Doc. 102, at 12–13). The facts in this case, Davis contends, are materially different. (*Id.* at 13). On June 21, 2018, Davis applied for a deckhand/ rigger position with Adriatic Marine. (Rec. Doc. 86-1, at 8). It was on this date that Davis underwent a pre-employment physical examination with Adriatic Marine's clinic and allegedly concealed his prior medical conditions. (Rec. Doc. 102-2, at 3); (Rec. Doc. 102-6, at 70–72). At this physical examination, Davis was cleared for heavy duty work, and it was noted that Davis "was able to complete all requirements tested for his position." (Rec. Doc. 102-6, at 71). On August 4, 2018, Davis underwent another physical examination by Adriatic Marine's clinic after suffering a lumbar strain during work. (Rec. Doc. 102-2, at 3); (Rec. Doc. 102-6, at 31). After this examination, he was released to full duty with no limitation on August 13, 2018. (Rec. Doc. 102-6, at 31–32). It was not until over a year later on November 24, 2019 that Davis suffered the injury at issue in this case. (Rec. Doc. 102-2, at 2). During this period between his lumbar strain and the incident at issue, Davis received salary increases and a promotion. (*Id.* at 3); (Rec. Doc. 102-6, at 3–5).

However, Adriatic Marine asserts that if it had known about Davis's preexisting medical conditions, the general policy, like the policy in *Juach and Ramirez*, is to "seek further consultation and information, including but not limited to . . . additional testing or evaluation in order to determine whether, despite these preexisting conditions, the employee can safely perform the work for which he or she is hired . . ." (Rec. Doc. 86-11, at 3). Grabert testified at his deposition that if Davis had disclosed any preexisting injuries to his knees, shoulder, neck, and back, Adriatic Marine's clinic would have notified Grabert to tell him they were not passing Davis immediately, but instead following up with his personal care providers to get release documentation. (Rec. Doc. 121-5, at 103). The timeline to get this information varies based upon the individual's clinic and how quickly that clinic responds to requests so it could take a day or weeks. (*Id.* at 105). Once Adriatic Marine's clinic gets the requested information, they determine whether the individual can safely perform the U.S. Coast Guard strength and agility test. (*Id.*). These are the same tests that every individual must take before Adriatic Marine makes the decision to hire a person. (*Id.* at 98). Grabert testified that the ultimate decision to hire someone is based upon the medical opinions from Adriatic Marine's clinic because the operative employment question is whether the person can safely perform the task required of them. (*Id.* at 115).

However, Grabert made it clear that despite this "operative question," after passing the medical tests, the individual will only be *eligible* for hire. (*Id.* at 117). The ultimate hiring decision, which is made solely by Grabert, is not just simply whether

the individual can safely perform the work. (*Id.* at 137). There are other factors considered, such as Grabert's personal determination of the severity of preexisting medical conditions. (*Id.* at 137–38). Grabert testified that despite Davis passing the physical and agility tests, if Davis had disclosed all of his preexisting medical conditions, Adriatic Marine would not have hired him. (*Id.* at 134–37). "I don't want to take a risk on a chance of him being able to safely perform the work." (*Id.* at 134). Someone with preexisting medical conditions, Grabert testified, is going to "[b]e more subject to be quickly injured while they're [on a vessel]." (*Id.*). "[W]hat I'm looking for are previous lower back, shoulder, something with his spine injuries . . .[b]ecause they don't go away . . . and so he's always going to seek treatment for it." (*Id.* at 135–36). Moreover, because of the severity of Davis's preexisting medical conditions, Grabert testified that if Davis had answered truthfully when asked by Grabert about his prior medical history, he would never have offered him employment or even asked Adriatic Marine's clinic for their opinion because he didn't "want to take a risk on a chance of him being able to safely perform the work." (*Id.* at 133–34).

As the moving party with the burden of proof at trial, Adriatic Marine has the burden of coming forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial, and Davis, as the nonmoving party, can then defeat the motion by countering with sufficient evidence of his own. The question is whether Davis's disclosure of his preexisting medical conditions would have delayed his employment or prevented it entirely. First, unlike the employer in *Savoie v. Inland Dredging Co. LLC* who stated that the plaintiff *may* have been referred for

further medical review, Grabert testified that Adriatic Marine's clinic would have notified Grabert to tell him they were not passing Davis immediately, but instead following up with his personal care providers to get release documentation. This single word created a genuine issue of fact in *Savoie*, but, unfortunately, is not present here. Next, like the employers in *Juach* and *Ramirez*, Grabert stated that the protocol when a prospective employee has preexisting medical conditions is to seek further medical evaluation. However, unlike the plaintiffs in *Juach* and *Ramirez* who were both injured soon after they were hired, Davis was injured over a year after his hire by Adriatic Marine. In each case, the Fifth Circuit focused it's reasoning on the fact that each plaintiff's employer said a medical evaluation would have delayed, at the very least, the plaintiffs' hire such that they each would not have been present on the vessel at the time of the accident. Therefore, any delay in hiring Davis caused by further medical evaluation by Adriatic Marine would likely not have prevented his presence on the M/V CARIBOU. However, this reasoning is contingent on the fact that, despite his preexisting medical conditions, Adriatic Marine would have eventually hired Davis after he passed further medical evaluations. Adriatic Marine's Vice President of HR/QHSE unequivocally stated that "[h]ad I known about [his preexisting conditions]. I would have never hired him." (*Id.* at 137). Therefore, the Court finds that no genuine issue of material fact exists as to the materiality of Davis's preexisting medical conditions on Adriatic Marine's decision to hire him.

## <u>CONCLUSION</u>

Accordingly,

**IT IS HEREBY ORDERED** that Adriatic Marine, LLC's *Motion for Partial Summary Judgment* **(Rec. Doc. 86)** is **GRANTED.**

**IT IS FURTHER ORDERED** that Dontrelle Davis's claims for maintenance and cure are **DISMISSED.**

New Orleans, Louisiana, this 1st day of August, 2022.

_____
CARL J. BARBIER
UNITED STATES DISTRICT JUDGE